**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**   1:22-mj-02928 Damian

UNITED STATES OF AMERICA

v.

Inelbe German Prieto Alana, Douglas David Melean,
Elbing Javier Beuses Ramirez, Mervin Gerardo
Mendez Araujo, and Alvaro Enrique Castillo,

                    Defendants.

_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States
   Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? No

2. Did this matter originate from a matter pending in the Central Region of the United States
   Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     No

                              Respectfully submitted,

                              JUAN ANTONIO GONZALEZ
                              UNITED STATES ATTORNEY

          BY:   *Eli S. Rubin*
                _____
                Eli S. Rubin
                Assistant United States Attorney
                Court ID No.      A5502535
                99 N.E. 4th Street
                Miami, Florida 33132
                Tel: 305-961-9247
                Fax: 305-530-6158
                Email: Eli.Rubin@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 1:22-mj-02928 Damian |
| Inelbe German Prieto Alana, Douglas David Melean, Elbing Javier Beuses Ramirez, Mervin Gerardo Mendez Araujo, and Alvaro Enrique Castillo, | ) ) ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___May 30, 2020 through April 13, 2021___ in the county of ___Miami-Dade___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| _Code Section_ | _Offense Description_ |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud; and |
| 18 U.S.C. § 1349 | Conspiracy to Commit Bank Fraud. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_David Brant_
_____
_Complainant's signature_

Special Agent David Brant, FDIC-OIG
_____
_Printed name and title_

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  **Face Time.**

Date:  _May 31, 2022  2:33pm_

_____
_Judge's signature_

City and state:  ___Miami, Florida___

Honorable Melissa Damian, U.S. Magistrate Judge
_____
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, David Brant, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Deposit Insurance Corporation Office of Inspector General ("FDIC-OIG") and have been so since September 2019.  Prior to that, I was a Special Agent with the Internal Revenue Service - Criminal Investigation ("IRS-CI") for approximately ten years.  Throughout the course of my career, I have participated and directed numerous criminal investigations involving identity theft, fraud against the government, bank fraud, and many other illegal schemes affecting the government and financial institutions. Through my training and experience, I am familiar with the tactics, methods, and techniques individuals use to commit various types of fraud and money laundering schemes.

2.      This affidavit is made in support of a Criminal Complaint charging Inelbe German Prieto Alana ("PRIETO"), Douglas David Melean Socorro ("MELEAN"), Elbing Javier Beuses Ramirez ("BEUSES"), Mervin Gerardo Mendez Araujo ("MENDEZ"), and Alvaro Enrique Castillo ("CASTILLO" and, collectively, the "Defendants") each with Bank Fraud and Conspiracy to Commit Bank Fraud in violation of Title 18, United States Code, Sections 1344 and 1349.

3.      This affidavit is based on my personal investigation and investigation by others, including federal law enforcement officials whom I know to be reliable and trustworthy.  The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means.  This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

## OVERVIEW OF THE PAYCHECK PROTECTION PROGRAM ("PPP")

4.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

5.      A key source of relief provided by the CARES Act was the Paycheck Protection Program ("PPP"), which authorized up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses.  Among other increases in PPP funding, in or around April 2020, Congress authorized over $300 billion in additional PPP funding.  On approximately January 14, 2021, the SBA, with the Treasury Department, made available to the public additional PPP funds so that eligible borrowers could receive a second PPP loan.

6.      In order to obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan had to provide documentation to the lending institution showing their payroll expenses; typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

7.      A PPP loan application had to be processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies,

which were 100% guaranteed by Small Business Administration ("SBA").   Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8.      PPP loan proceeds had to be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

**OVERVIEW OF DEFENDANT'S CONSPIRACY AND SCHEMES TO DEFRAUD**

9.      The Defendants conspired with Willian Alexander Posada Sandrea ("Posada") and others to submit false and fraudulent PPP loan applications on behalf of Florida-based companies and share in the proceeds.   In total, the defendants submitted approximately ten applications seeking approximately $3,473,467.  Seven of the applications were approved, and the Defendants received approximately $2,636,305 in fraud proceeds.

10.      In their applications, the Defendants inflated the number of employees and average monthly payrolls of their respective companies, and supported these misrepresentations with fraudulent tax return documents created for the sole purpose of misleading the lending institutions.

11.      On May 12, 2022, Posada was arraigned on an Information charging him with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349.  *See* Information, *United States v. Willian Alexander Posada Sandrea*, 22-20194-CR-JEM (S.D. Fla. May 11, 2022).  He was previously charged via Criminal Complaint with Bank Fraud in violation of 18 U.S.C. § 1344.

Criminal Complaint, *United States v. Willian Alexander Posada Sandrea*, 21-04212-MJ-JG (S.D. Fla. Dec. 13, 2021).

12.     As detailed below, each of the Defendants (i) emailed with Posada concerning one or more application; (ii) had an application submitted from an IP address associated with Posada; (iii) paid a fee to Posada-controlled entity with loan proceeds; and/or (iv) received a payment fraudulently labeled as a paycheck from Autenticos Autos Sales Corp. ("Autenticos"), a company controlled by Posada that received a fraudulent PPP loan.  In addition, in at least two instances, Posada emailed himself portions of a Defendant's fraudulent application.

## Background

13.     The Defendants are all residents of Miami-Dade County in the Southern District of Florida.

14.     Banks 1 and 2 are financial institutions headquartered in North Carolina and New Jersey, respectively.  Both are insured by the Federal Deposit Insurance Corporation ("FDIC") and participated in the SBA's PPP as lenders and, as such, were authorized to lend funds to eligible borrowers under the terms of the PPP.

## PRIETO FILED THREE FRAUDULENT PPP LOAN APPLICATIONS

15.     PRIETO submitted three false and fraudulent PPP loan applications on behalf of two entities he controlled, Sazon Zuliano Corp. ("Sazon") and P & A Import and Sales Corp. ("P & A").  The applications sought $1,089,162 in loan proceeds. One application was approved and PRIETO received $252,000 in fraud proceeds.

### PRIETO Filed a PPP Loan Application on Behalf of Sazon at Bank 1

16.     Per documents filed with Florida's Division of Corporations, PRIETO became President of Sazon on approximately October 17, 2019.

4

17.     On approximately April 7, 2020, PRIETO became the sole signatory on an account at Bank 1 in the name of Sazon and ending in 5807 ("Account 5807").

18.     On approximately May 20, 2020, PRIETO fraudulently filed a PPP loan application on behalf of Sazon online at Bank 1.

19.     In the application, PRIETO listed himself as the company's Primary Contact and sole owner of the company.  He listed his email address as inelbeprieto1906[XX]@gmail.com (the "PRIETO Email Address").[1]  He stated that the company had 25 employees and an average monthly payroll of $100,800.

20.     In support of the application, PRIETO included six fraudulent IRS forms: one Form 940 (Employer's Quarterly Federal Tax Return) for 2019 and five Form 941s (Employer's Quarterly Federal Tax Return) for the four quarters of 2019 and the first quarter of 2020.  The Form 940 stated that Sazon paid $1,209,600 in total payments to employees in 2019.  The Form 941s stated that Sazon had 14 employees and paid between $302,399.33 and $302,410.48 in "[w]ages, tips, and other compensation" every quarter.  Each Form 941 was dated May 24, 2020, and appeared to have been signed by PRIETO, based on PRIETO's signature in Florida's Driver and Vehicle Information Database ("DAVID").

21.     Bank 1 approved PRIETO's application.  On approximately May 26, 2020, Bank 1 deposited $252,000 into Account 5807.

22.     Among other checks drawn on Account 5807 that PRIETO wrote were four made out to Posada's entity Autenticos.  The checks totaled $13,800.

---

[1] The username of the email address contains PRIETO's full name and birthdate, June 19, 19[XX]. A portion of PRIETO's birthdate is redacted to protect his personal identifying information.

### *PRIETO Filed a PPP Loan Application on Behalf of Sazon at Bank 2*

23.     On approximately February 10, 2021, PRIETO opened two accounts at Bank 2 in the name of Sazon.  PRIETO was the sole signatory on each account.  PRIETO opened the accounts at a Bank 2 branch located on Ponce de Leon Boulevard in Coral Gables, Florida, in the Southern District of Florida.

24.     The very next day, approximately February 11, 2021, PRIETO used the PRIETO Email Address to email a color photograph of his valid Florida driver's license to Posada at willianposada@gmail.com (the "Posada Email Address"). [2]

25.     On approximately February 22, 2021, Posada, using the Posada Email Address, emailed himself a copy of a new PPP loan application prepared on behalf of Sazon.

26.     That same day, PRIETO caused the submission of a fraudulent PPP loan application on behalf of Sazon at Bank 2.  The application was submitted online from an internet protocol ("IP") address ending in 212 (the "212 IP Address").  That IP address was also used to submit fraudulent PPP loan applications on behalf of P & A and DJM Services, LLC ("DJM"), as described below.  At the time of the application, the 212 IP Address was assigned to a company that had the same address as one of Posada's entities and for which Posada's close family member served at President and Vice President.

27.     The application stated that Sazon had 20 employees and an average monthly payroll of $100,800.  The application sought a loan in the amount of $352,800.  PRIETO was again listed as the company's Primary Contact and sole owner.

---

[2] On approximately November 3, 2021, Chief Magistrate Judge Edwin G. Torres issued a search warrant for the Posada Email Address. *See In the Matter of the Search of Information Associated with WILLIANPOSADA@GMAIL.COM Stored At Premises Controlled by Google LLC*, 21-04168-MJ-Torres (S.D. Fla. Nov. 3, 2021) (SEALED).

28.     Included in the application was the IRS Form 940 for 2019 and IRS Form 941 for the first quarter of 2020 included in the previous application.  The application also included a photograph of the front side of PRIETO's valid Florida driver's license.

29.     On approximately February 25, 2021, a Bank 2 employee emailed PRIETO regarding the PPP loan application.  PRIETO forwarded the email to the Posada Email Address without alteration.

30.     On approximately March 2, 2021, that same Bank 2 employee again emailed PRIETO regarding the application.  PRIETO again forwarded the email to the Posada Email Address without alteration.

31.     On approximately March 6, 2021, a Bank 2 employee emailed PRIETO notifying him that his application had been declined.  PRIETO forwarded the email to the Posada Email Address.

### PRIETO Filed a PPP Loan Application on Behalf of P & A at Bank 2

32.     On approximately February 11, 2021, PRIETO applied for yet another fraudulent PPP loan, this time on behalf of P & A.  The application, filed from the 212 IP Address, stated that the company had 30 employees and an average monthly payroll of $193,745.  The application sought $484,362 in proceeds.  PRIETO was listed as the company's Primary Contact and sole owner of the company.

33.     On approximately February 11, 2021, Posada, using the Posada Email Address, emailed himself a copy of a new PPP loan application prepared on behalf of P & A.

34.     The application included two signed IRS Forms: a Form 940 for 2020 and an IRS Form 941 for the first quarter of 2020.  The Form 940 for 2020 stated that the company had spent $2,324,940 in payments to all employees of P & A in 2020.  The Form 941 stated that P & A had

30 employees and paid $581,235 in "[w]ages, tips, and other compensation" in the first quarter of 2020.

35.     The application also included a photograph of the front of PRIETO's valid Florida driver's license.

36.     Bank 2 declined the application.

### All Three of PRIETO's Loan Applications Were False and Fraudulent

37.     All three of PRIETO's applications were false and fraudulent.

38.     First, all the IRS Forms 940s and 941s that PRIETO submitted on behalf of both entities were false and fraudulent: they had not in fact been filed with the IRS.  As of approximately June 3, 2021, and June 4, 2021, the IRS reported that there was no record of either entity submitting a single Form 940 or Form 941.  Rather, the Forms 940 and 941 that PRIETO included in his applications were filled out and included in the applications to create the fraudulent and misleading impression that Sazon and P & A had dozens of employees and paid hundreds of thousands of dollars in payroll.

39.     Second, during the relevant time, all Florida-based employers were required to report employee information, and pay employment taxes, to the Florida Department of Revenue ("FLDOR").  However, as of the time of the applications, FLDOR did not have any record of any wages paid to employees of Sazon or P & A, nor any record of either company paying taxes for employees.

40.     Third, while fraudulently claiming to own two businesses that employed dozens of people, PRIETO personally received payments styled as paychecks from companies that had received at least one fraudulent PPP loans.  These payments constituted movement of fraudulent PPP loan proceeds to make it appear that the loans were used for payroll:

8

a.  PRIETO received two checks totaling $14,648 from Posada's company, Autenticos. The first check, dated May 8, 2020, stated "April PAY Rool[sic]" in the memo line. The second check, dated May 31, 2020, stated "PAY ROOL MAY [sic]." Both checks followed Autenticos's receipt of fraudulent proceeds of a PPP loan in the amount of $504,000—exactly twice the PPP loan amount PRIETO received for Sazon. At the time of the payments to PRIETO, Autenticos had not filed any tax returns with the IRS, nor recorded any employees with FLDOR.

b.  PRIETO received four checks totaling $12,850.00 from Florida Entity 1. The checks were dated between February 28, 2021, and April 15, 2021. Each check had the word "payroll" written in the memo line. Florida Entity 1 had received a $415,802 PPP loan from Bank 2 on approximately February 24, 2021, but was, at the time, deemed inactive by FLDOR.

**MELEAN SUBMITTED THREE FRAUDULENT PPP LOAN APPLICATIONS**

41.  MELEAN submitted three false and fraudulent PPP loan applications on behalf of DJM Services, LLC ("DJM"), a Florida-based entity that he controlled. Two applications were approved, and MELEAN received approximately $706,170 in fraud proceeds.

***MELEAN Filed His First PPP Loan Application at Bank 1***

42.  On approximately May 30, 2020, MELEAN filed a fraudulent PPP loan application on behalf of DJM online at Bank 1. MELEAN had formed DJM under the laws of Florida on approximately February 1, 2018.

43.  In the application, MELEAN listed himself as the company's Primary Contact and sole owner of the company. He stated that the company had 20 employees and an average monthly payroll of $141,234.

44.     In support of his application, MELEAN included one Form 940 for 2019 and five

Form 941s for the four quarters of 2019 and the first quarter of 2020.  The Form 940 stated that

DJM paid $1,694,808.80 in total payments to all employees in 2019.  The Form 941s stated that

DJM had 20 employees and paid $423,702 in "[w]ages, tips, and other compensation" each

quarter.  Each IRS form was signed "Douglas Melean" and dated May 28, 2020.

45.     Bank 1 approved MELEAN's application.  On approximately June 2, 2020, Bank

1 deposited $353,085 into an account MELEAN had previously opened in the name of DJM and

for which he was the sole signatory ("Account 8660").  Among other checks MELEAN wrote

drawn on Account 8660 that utilized loan proceeds were three made out to himself totaling over

$15,000.

### MELEAN Filed a Second PPP Loan Application at Bank 1

46.     On approximately January 25, 2021, MELEAN caused the filing of a second

fraudulent PPP loan application on behalf of DJM at Bank 1.

47.     The application stated that DJM had 15 employees and an average monthly payroll

of $141,234.  Included as support, were the first pages of at least three monthly bank statements

purportedly for an account in the name of DJM at Bank 3 and ending in 8632 ("Account 8632").

The statements showed that the account had monthly balances of hundreds of thousands of dollars.

48.     As noted above, the application was submitted online from the 212 IP Address,

which was also used to submit two of PRIETO's applications and which was assigned to an entity

associated with Posada.

49.     On approximately February 1, 2021, Posada, using the Posada Email Address,

emailed MELEAN at meleandouglas@gmail.com copies of the signed Forms 940 and 941 that

were included in DJM's first fraudulent PPP loan application.  As noted above, the forms were signed "Douglas Melean."

50.     On approximately February 3, 2021, Bank 1 emailed MELEAN at djmservicesllc@gmail.com.  The email stated, "You need to take action on your [PPP] loan application[.]"  MELEAN forwarded the email to Posada at the Posada Email Address.

51.     Bank 1 ultimately cancelled MELEAN's application.

**MELEAN Filed a Third Application, This Time at Bank 2**

52.     On approximately February 17, 2021, MELEAN opened two accounts in the name of DJM at Bank 2.  One account ended in 9738 ("Account 9738").  MELEAN was the sole signatory on each account.  According to the accounts' New Business Account forms, MELEAN opened the accounts at a Bank 2 branch on Collins Avenue in Miami Beach in the Southern District of Florida.

53.     On approximately February 23, 2021, Posada emailed himself a color photograph of the front of MELEAN's valid Florida driver's license.

54.     That same day, approximately February 23, 2021, MELEAN caused to be submitted a fraudulent PPP loan application on behalf of DJM at Bank 2.  The application stated that the company had 20 employees and an average monthly payroll of $141,234.  MELEAN was listed as the company's Primary Contact and sole owner of the company.

55.     As support, the application included the same IRS Form 940 for 2019 and Form 941 for the first quarter of 2020 as described above.  The application also included the color photograph of MELEAN's driver's license that Posada had emailed himself.

56.     Bank 2 approved the application.  On approximately March 16, 2021, Bank 2 deposited $353,085 into Account 9738.  Among other checks MELEAN wrote using the loan

proceeds were four checks made out to himself totaling $35,000 and three checks made out to DJM totaling $25,000. MELEAN endorsed and negotiated each check.

### All Three of MELEAN's PPP Loan Applications Were False and Fraudulent

57. All three of MELEAN's PPP loan applications were false and fraudulent.

58. First, the IRS Forms 940 and 941s included in the applications were false and fraudulent: they had not in fact been filed with the IRS. As of approximately June 3, 2021, the IRS reported that it had not received a single tax filing on behalf DJM, let alone the six that MELEAN prepared.

59. Second, FLDOR did not have any record of any wages paid to employees by DJM, nor any record of DJM in fact paying taxes for employees.

60. Third, the bank statements that MELEAN included in his second application from Bank 3 were false and fraudulent. Actual statements for Account 8632 received from Bank 3 show that the account did not belong to DJM but rather an entity controlled by Posada. MELEAN caused the statements to be edited by inserting DJM's name and address and deleting Posada's entity's name and address. On February 8, 2021, MELEAN, using the email address meleandouglas@gmail.com, had emailed the fraudulent statements to the Posada Email Address.

### BEUSES SUBMITTED TWO FRAUDULENT PPP LOAN APPLICATIONS

61. BEUSES submitted two false and fraudulent PPP loan applications on behalf of Vanini LLC ("Vanini"), a Florida-based entity for which he controlled. Both applications were approved, and MELEAN received approximately $756,600 in fraud proceeds.

### BEUSES Conspired with Posada to
### File a PPP Loan Application on Behalf of Vanini at Bank 1

62. On approximately July 9, 2020, BEUSES filed an Amended Annual Report with the Florida Division of Corporations on behalf of Vanini LLC ("Vanini"). "N.B." had formed

Vanini in October 2019.  In his Amended Annual Report, BEUSES listed himself as the entity's Registered Agent and President.

63.     That same day, BEUSES caused to be filed a fraudulent PPP loan application on behalf of Vanini at Bank 1.  BEUSES was listed as the company's Primary Contact and sole owner.  Beuseselbing@gmail.com (the "BEUSES Email Address") was listed as BEUSES's email address.

64.     The application was submitted online.  The email address used to submit the application was the BEUSES Email Address.  The IP address from which the application was submitted ended in 239 (the "239 IP Address").  At a later point in time, the 239 IP Address was assigned to Posada's own residence.[3]

65.     The application stated that the company had 15 employees and an average monthly payroll of $151,320.

66.     As support, the application included an IRS Form 940 for 2019 and an IRS Form 941 for the first quarter of 2020.  The Form 940 stated that Vanini—formed under the laws of Florida in October 2019—paid $1,815,840 to employees in 2019.  The Form 941 stated that Vanini had 18 employees and paid $453,960 in "[w]ages, tips, and other compensation" in the first quarter of 2020.  Both forms were dated July 10, 2020, and signed by BEUSES.

---

[3]  AT&T records indicate that the service address for the 239 IP Address was a residence in Doral, Florida.  On January 27, 2022, Posada asserted in a court filing that he lives at that very address.  Unopposed Motion to Approve Change of Address, *United States v. Willian Alexander Posada Sandrea*, 22-20194-CR-JEM (S.D. Fla. Jan. 27, 2022).

67.     The very next day, approximately July 10, 2020, BEUSES obtained signatory authority for Vanini's account at Bank 1 ("Account 9878"). The account had been opened by "N.B." in December 2019.[4]

68.     On approximately July 10, 2020, Bank 1 emailed BEUSES, at the BEUSES Email Address, a thank you note for "submitting your application for the Paycheck Protection Program to [Bank 1]." BEUSES forwarded the email to Posada at the Posada Email Address.

69.     Over the next four days, BEUSES forwarded three additional emails to the Posada Email Address concerning the loan application and/or Account 9878.

70.     Bank 1 approved the application. On approximately July 14, 2020, Bank 1 deposited $378,300 into Account 9878.

71.     On approximately July 17, 2020, BEUSES wrote a check for $33,000 to an entity that Posada controlled. The check was drawn on Account 9878 and utilized loan proceeds. The memo line of the check read, "Vehicle Purchase."

72.     In the weeks that followed, BEUSES wrote himself at least four checks totaling $21,613.68. The checks were all drawn on Account 9878.

### BEUSES Conspired with Posada to
### File a PPP Loan Application on Behalf of Vanini at Bank 2

73.     On approximately February 11, 2021, BEUSES opened two accounts at Bank 2 in the name of Vanini. One account ended in 7120 ("Account 7120"). BEUSES was the sole signatory for each account. Based on Bank 2 records, BEUSES opened the accounts at a Bank 2 branch in Doral, Florida, in the Southern District of Florida.

---

[4] Per Bank 1 records, BEUSES was listed on the account as President and N.B. was listed as Vice President. The mailing address for the monthly statements was changed to BEUSES's own address in Florida's Driver and Vehicle Information Database. ("DAVID").

74.    On approximately February 22, 2021, BEUSES caused the submission of a fraudulent PPP loan application on behalf of Vanini at Bank 2.  The application stated that the company had 25 employees (approximately ten more than as reported in his first application) but the same average monthly payroll, $151,320.  The application requested a loan in the amount of $480,000.  BEUSES was again listed as the company's Primary Contact and sole owner of the company.

75.    On approximately February 23, 2021, a Bank 2 employee emailed BEUSES at the BEUSES Email Address thanking BEUSES for applying and requesting documentation "to verify" Vanini's North American Industry Classification System (NAICS) code.  BEUSES quickly forwarded the email to the Posada Email Address.

76.    On approximately February 24, 2021, BEUSES caused the submission of an updated application on behalf of Vanini.  The updated application stated that the company had 18 employees and an average monthly payroll of $151,320.  The updated application requested $378,300.  BEUSES was again listed as the company's Primary Contact and sole owner of the company.

77.    The updated application included, among other documents, the same two IRS forms included in Vanini's application at Bank 1.  Also included was a color photograph of the front side of BEUSES's valid Florida driver's license.

78.    Bank 2 approved the loan.  On approximately March 18, 2021, Bank 2 deposited the proceeds of the loan, $378,300, into Account 7120.  Within days of receiving the loan proceeds, BEUSES wrote the following checks, among others, all drawn on Account 7120 (i) two checks, each for $3,552, made out to BEUSES; (ii) a $4,500 check made out to a then-inactive entity

controlled by Posada; and (ii) two checks totaling $38,334 made out to Sazon.  Each check was subsequently negotiated

### Both of BEUSES's Loan Applications Were False and Fraudulent

79.    Both of BEUSES's PPP loan applications were false and fraudulent.

80.    First, the IRS forms included in both applications were false and fraudulent: they had not in fact been filed with the IRS.

81.    Second, as of the time of the applications, FLDOR did not have any record of any wages paid to any employees of Vanini, nor any record of Vanini paying taxes on employees.

82.    Third, while receiving over $756,000 in fraudulent PPP loan proceeds on behalf of Vanini, and issuing himself several payments with loan proceeds, BEUSES also personally received payments styled as paychecks from at least three other entities that each received at least one fraudulent PPP loan in order to make it appear as payments for payroll:

    a.    BEUSES received two checks totaling $14,648 from Posada's entity Autenticos. The first check, dated May 5, 2020, stated "PAY APRiL [sic]" in the memo line. The second check, dated May 31, 2020, stated "PAY ROOL MAY [sic]."  BEUSES endorsed both checks.

    b.    BEUSES received two checks totaling $8,000 from PCGOTECH INC. ("PCGOTECH").  Both checks were dated April 23, 2021.  As described more fully below, PCGOTECH received a PPP loan from Bank 2 in the amount of $433,215 the previous month.  At the time of the payments to BEUSES, PCGOTECH had not filed any tax returns with the IRS, nor recorded any employees with FLDOR. BEUSES endorsed both checks.

  c. BEUSES received four checks totaling $12,850.00 from Florida Entity 1. The checks were dated between February 28, 2021, and April 15, 2021. Each check had the word "payroll" written in the memo line. BEUSES endorsed the checks.

**MENDEZ FILED A FALSE AND FRAUDULENT PPP LOAN APPLICATION**

  83. On approximately February 1, 2021, MENDEZ became President and Registered Agent of PCGOTECH, a Florida-based entity formed in 2017.[5]

  84. Approximately two days later, February 3, 2021, MENDEZ opened two accounts in the name of PCGOTECH at Bank 2. One of the accounts ended in 1725 ("Account 1725"). Per Bank 2 documents, MENDEZ opened the accounts at a Bank 2 branch located in Miami Beach in the Southern District of Florida. MENDEZ was the only signatory on each account.

  85. On approximately February 8, 2021, Posada used the Posada Email Address to email himself an IRS Form 940 for PCGOTECH for the year 2019. The form stated that PCGOTECH paid $2,094,336 to employees for wages in 2019.

  86. Shortly after, Posada emailed himself an IRS Form 941 for PCGOTECH for the fourth quarter of 2020. The form stated that the company had 25 employees and had paid employees $523,584 for wages that quarter.

  87. That same day, approximately February 8, 2021, MENDEZ caused to be filed online at Bank 1 a fraudulent PPP loan application on behalf of PCGOTECH. The application listed MENDEZ as the company's Primary Contact and sole owner. MENDEZ's listed email

---

[5] On February 1, 2021, MENDEZ filed a Florida Profit Corporation Reinstatement with Florida's Secretary of State naming himself President and Registered Agent of PCGOTECH. Prior to MENDEZ's filing, no one had filed anything with the Florida Secretary of State on behalf of PCGOTECH since the company's Articles of Incorporation in June 2017.

address was mgma1978@gmail.com.[6]  The application stated that the company had 30 employees and an average monthly payroll of $173,286.

88.     Both IRS forms that Posada emailed himself were included in the application.  The application also included one additional Form 941 for the first quarter of 2020.  That document stated that PCGOTECH had 30 employees and paid $527,345 in "[w]ages, tips, and other compensation" that quarter.  All IRS forms bore a signature that appeared to match MENDEZ's signature as recorded in his Florida driver's license.

89.     Included in the application was a color photograph of MENDEZ's valid Florida driver's license.

90.     Bank 1 approved MENDEZ's application.  On approximately March 16, 2021, Bank 1 deposited $433,215 into Account 1725.

91.     On March 20, March 25 and April 7, 2021, MENDEZ wrote himself three checks drawn on Account 1725 using loan proceeds.  The checks totaled $15,541.80.  MENDEZ endorsed each check.

92.     On approximately April 13, 2021, MENDEZ wrote a check drawn on Account 1725 for $32,000.  The check was made out to Autos W Corp., a company controlled by Posada and used to fraudulently apply for a PPP loan.

*MENDEZ's Application Was False and Fraudulent*

93.     MENDEZ's application was false and fraudulent.

94.     First, the three IRS forms included in his application were false and fraudulent: they had not in fact been filed with the IRS.

---

[6] The username of the email address includes MENDEZ's initials ("mgma") and the year in which he was born ("1978").

95.     Second, FLDOR did not have any record of any wages paid to employees of PCGOTECH, nor any record of PCGOTECH in fact paying taxes on employees.

96.     Third, PCGOTECH was considered inactive under the Florida Division of Corporations until immediately prior to MENDEZ's applying for a PPP loan.

97.     Fourth, MENDEZ received two purported payroll checks totaling $14,648 from Autenticos, Posadas' company.  The checks, dated May 5, 2020, and May 31, 2020, had the words "Pay April" and "Payrool May" written in the memo lines.  Months later, MENDEZ would report that he was the sole owner of a business that employed 30 people.

**CASTILLO FILED A FALSE AND FRAUDULENT PPP LOAN APPLICATION**

98.     On approximately July 29, 2020, CASTILLO became the President of AC Export Express Corp. ("AC Export").

99.     On February 9, 2021, CASTILLO opened two bank accounts at Bank 2.  One account ended in 001 ("Account 0011").  Based on Bank 2 records, CASTILLO opened the accounts at a Bank 2 branch in Coral Gables, Florida, in the Southern District of Florida.

100.    On approximately February 12, 2021, Posada, using the Posada Email Address, emailed himself a hard copy PPP loan application filled out on behalf of AC Export.  The subject line of the email read "Ppp ac export Alvarito."  The application was three pages long and appeared to have been scanned.  CASTILLO appeared to have signed the last page.  That same day, Posada also emailed himself profit and loss statements for AC Export for the years 2019 and 2020.

101.    Also on February 12, 2021, CASTILLO caused to be filed online a fraudulent PPP loan application on behalf of AC Export.  The application reported that AC Export had 30 employees and an average monthly payroll of $195,328.  CASTILLO was listed as the company's President and sole owner.

102.     The application filed online contained iterations of the hard copy application and profit and loss statements that Posada had emailed himself. The profit and loss statements bore a signature that appeared to match CASTILLO's signature as recorded in his Florida driver's license. The online application also included a color photograph of the front of CASTILLO's valid Florida driver's license and two IRS forms: a Form 940 for 2019 (reporting $2,367,008 in payments to employees in 2019) and a Form 941 for the first quarter of 2020 (reporting 25 employees and $591,752.04 in "[w]ages, tips, and other compensation" that quarter).

103.     Bank 2 approved CASTILLO's application. On approximately February 24, 2021, Bank 2 deposited $488,320 into Account 0011.

104.     Two days later, approximately February 26, 2021, CASTILLO procured two cashier's checks, both drawn on Account 0011. One was for $35,000 and made out to an inactive Florida-based company for which Posada served as President, A & W Import and Export Auto Sales Corp. The other was for $40,000 and made out to another Florida-based company Posada controlled, Autos W Corp.

105.     On approximately March 4, 2021, CASTILLO obtained a cashier's check drawn on Account 0011 for $66,518. The check was made out to P & A, the entity controlled by PRIETO.

106.     CASTILLO also procured at least two cashier checks made out to himself, one for $15,000 dated February 26, 2021, and one for $12,000 dated March 6, 2021.

### CASTILLO's Application Was False and Fraudulent

107.     CASTILLO's application was false and fraudulent.

108.     First, the two IRS forms included in his application were false and fraudulent: they had not in fact been filed with the IRS.

109.     Second, FLDOR did not have any record of any wages paid to employees of AC

Export, nor any record of AC Export in fact paying taxes on employees.

## CONCLUSION

110.     Based on my training and experience, and the information provided in this affidavit,

I respectfully submit that there is probable cause to believe that:

- From on or about May 30, 2020, through April 13, 2021, in the Southern District of Florida and elsewhere, the defendants, INELBE GERMAN PRIETO ALANA, DOUGLAS DAVID MELEAN SOCORRO, ELBING JAVIER BEUSES RAMIREZ, MERVIN GERARDO MENDEZ ARAUJO, and ALVARO ENRIQUE CASTILLO did willfully, that is, with intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Willian Alexander Posada Sandrea and others, to commit an offense against the United States, that is, to knowingly execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, including Banks 1 and 2, which scheme and artifice did employ a material falsehood, and knowingly, and with intent to defraud, execute, and cause the execution of, a scheme and artifice to obtain money and funds owned by, and under the custody and control of, one or more financial institutions, by means of false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Sections 1344(1) and (2), and 1349.

- From on or about May 20, 2020, until approximately February 11, 2021, in the Southern District of Florida and elsewhere, the defendant, INELBE GERMAN PRIETO ALANA, did knowingly, and with intent to defraud, execute and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of, Bank 1 and Bank 2, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank 1 to deposit at least $252,000 into an account controlled by the defendant, in violation of Title 18, United States Code, Sections 1344 and 2.

- From on or about May 30, 2020, until approximately February 1, 2021, in the Southern District of Florida and elsewhere, the defendant, DOUGLAS DAVID MELEAN SOCORRO, did knowingly, and with intent to defraud, execute and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of, Bank 1 and Bank 2, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank 1 and

Bank 2 to each deposit at least $353,085 into accounts controlled by the defendant, in violation of Title 18, United States Code, Sections 1344 and 2.

- From on or about July 9, 2020, until approximately March 18, 2021, in the Southern District of Florida and elsewhere, the defendant, ELBING JAVIER BEUSES RAMIREZ, did knowingly, and with intent to defraud, execute and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of, Bank 1 and Bank 2, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank 1 and Bank 2 to each deposit at least $378,300 into accounts controlled by the defendant, in violation of Title 18, United States Code, Sections 1344 and 2.

- From on or about February 1, 2021, until approximately March 16, 2021, in the Southern District of Florida and elsewhere, the defendant, MERVIN GERARDO MENDEZ ARAUJO, did knowingly, and with intent to defraud, execute and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of, Bank 2, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank 2 to deposit at least $433,215 into an account controlled by the defendant, in violation of Title 18, United States Code, Sections 1344 and 2.

[remainder of page left blank intentionally]

- From on or about February 9, 2021, until approximately February 24, 2021, in the Southern

District of Florida and elsewhere, the defendant, ALVARO ENRIQUE CASTILLO, did knowingly, and with intent to defraud, execute and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of, Bank 2, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank 2 to deposit at least $488,320 into an account controlled by the defendant, in violation of Title 18, United States Code, Sections 1344 and 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

David Brant
Special Agent
Federal Deposit Insurance Corporation
Office of Inspector General

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Face Time on this __31st__ day of May 2022, in Miami, Florida.
2:33pm

HONORABLE MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

23